PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, Agee,[1] and Goodwyn, JJ.

LYNCHBURG DIVISION OF SOCIAL SERVICES

OPINION BY
v. Record No. 071964             JUSTICE G. STEVEN AGEE
                                  September 12, 2008
JAMES COOK, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

The Lynchburg Division of Social Services ("LDSS") appeals from the judgment of the Court of Appeals affirming the judgment of the Circuit Court of the City of Lynchburg awarding custody of a minor child to James and Sandra Cook. For the reasons set forth below, we will reverse the judgment of the Court of Appeals.

I.    RELEVANT FACTS AND PROCEEDINGS BELOW

A.    FACTUAL BACKGROUND

Amy Cook lived in the City of Lynchburg with her husband, Jimmy Cook, and their seventeen-month-old daughter, BC.[2] On March 26, 2004, Amy presented to Lynchburg General Hospital with severe depression and alleged that Jimmy had caused her condition by taking pornographic pictures of BC and viewing pornography with BC sitting in his lap.

---

[1] Justice Agee participated in the hearing and decision of this case prior to his retirement from the Court on June 30, 2008.

[2] Except where otherwise noted, we refer to the adult parties sharing a surname by their given names. We refer to the minor child by her initials.

In response to Amy's allegations, Lisa Parks, a Child Protective Service worker with the LDSS, and investigators from the Lynchburg Police Department interviewed the Cooks and obtained a search warrant, under which they seized computer equipment and approximately 300 images from the Cooks' home. In an affidavit in support of an emergency removal petition under Code § 16.1-251, Parks stated that most of the seized images were pornographic and depicted participants under the age of 18. According to Parks' affidavit, Jimmy denied taking pornographic pictures of his daughter and no objectionable pictures of BC were found. However, Jimmy admitted that he took photographs of his daughter for entry into photography contests and used the other pictures for ideas of how to pose BC.

In addition to Amy's accusations and the seized images, the LDSS investigation revealed Jimmy had a criminal conviction for assault against a six-year-old child in 1994. Amy admitted that she and Jimmy's family were aware of the earlier charges and that Jimmy used pornography prior to BC's birth. Though BC was unable to verbalize or respond to interview questions, Parks observed her engaging in sexual mimicry during a visit to the Cooks' home.

On April 6, 2004, Jimmy was arrested on two counts of possession of child pornography in violation of Code § 18.2-

2

374.1:1.[3]  That day, Amy took BC to Amy's aunt's home in accordance with a safety plan developed by Parks.  However, Amy returned with BC to their home in Lynchburg that night, in violation of the safety plan.  On the afternoon of April 7, following Jimmy's release from custody and Amy's violation of the safety plan, the LDSS placed BC in protective custody.  Amy, Jimmy, and Jimmy's mother, Sandra Cook,[4] each filed petitions for custody of BC in the Juvenile and Domestic Relations District Court of the City of Lynchburg ("Juvenile and Domestic Relations Court").

## B.  FOSTER CARE PROCEEDINGS

On April 8, 2004, the Juvenile and Domestic Relations Court entered an emergency removal order under Code § 16.1-251 transferring temporary custody of BC to the LDSS based upon findings that she "would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if she were returned to or left in the custody of . . . her parents" and that reasonable efforts had been made to prevent her removal from the home.  The Juvenile and Domestic Relations Court then entered a preliminary removal

---

[3] The charges were dismissed by orders of nolle prosequi entered January 5, 2005.

[4] Though not named in the petition for custody, Sandra's husband, James, was a party to the custody proceedings below and

3

order under Code § 16.1-252 confirming the LDSS as BC's temporary legal custodian "pending the entry of a dispositional order pursuant to Virginia Code § 16.1-278.2" and directing the LDSS to complete the investigation required by that section. At a subsequent hearing under Code § 16.1-252(G), the Juvenile and Domestic Relations Court made the specific finding that BC "is abused or neglected." The court set the date for the Code § 16.1-278.2 dispositional hearing and directed the LDSS to file a foster care plan under Code § 16.1-281.

The LDSS foster care plan recommended placing BC in a foster home with the goal of later returning her home. The Juvenile and Domestic Relations Court adopted the foster care plan submitted by the LDSS and entered a July 1, 2004, order transferring custody of BC to the LDSS and setting a foster care review hearing under Code § 16.1-282 for January 4, 2005.

The LDSS submitted a revised foster care plan, substituting a goal of continuing foster care for the earlier goal of returning BC to her parents' home. The Juvenile and Domestic Relations Court adopted that foster care plan at the January 4, 2005, foster care review hearing and set a permanency planning hearing under Code § 16.1-282.1 for May 27, 2005.

---

is an appellee in the appeal before us. We refer to James and

### C. CUSTODY PROCEEDINGS

While the foregoing proceedings were in progress, the Juvenile and Domestic Relations Court conducted hearings regarding the three competing petitions for custody filed by Amy, Jimmy, and the Grandparents, and ordered the court service unit to conduct an investigation of them. Subsequent to the January 4, 2005, foster care plan review order, but prior to the scheduled May 27, 2005, permanency planning hearing, the Juvenile and Domestic Relations Court entered a final custody order on March 11, 2005, awarding custody of BC to the Grandparents. Amy, Jimmy, and the LDSS separately appealed to the Circuit Court for the City of Lynchburg.

### D. APPELLATE PROCEEDINGS

Prior to trial de novo on the appeals in the circuit court, a motion by the LDSS to suspend the Juvenile and Domestic Relations Court's March 11, 2005, custody order was denied. The circuit court also determined in an interlocutory order that "there is no requirement for or need for a permanency planning hearing in the Juvenile Court on May 27, 2005."

In October 2005, at the conclusion of a two-day trial, the circuit court awarded custody of BC to the Grandparents.[5] The

_____

Sandra Cook collectively as "the Grandparents."

[5] At the conclusion of the trial, the LDSS inquired, "Will the Department of Social Services continue to be involved when

5

circuit court's final order of November 22, 2005, stated that
"[u]pon consideration of the evidence and all of the statutory
factors set forth in Virginia Code § 20-124.3 . . . the court
finds by clear and convincing evidence that the best interests
of [BC] require that her custody be awarded to James and Sandra
Cook, her paternal grandparents, and it is so ORDERED."
Additionally, the court's order set forth that "[u]pon
consideration of all the evidence adduced at the hearing, this
Court finds that no further provision of social services to the
child are required."

The LDSS timely objected to the circuit court's order,
noting the circuit court failed to make the findings required in
foster care proceedings under Code §§ 16.1-281(C1), 16.1-
282(D1), and 16.1-282.1(A1) (collectively, "the foster care
statutes").  The LDSS also objected on the basis that the
evidence was insufficient to support transfer of custody to the
Grandparents as being in the best interests of the child.

On appeal to the Court of Appeals, a divided panel of that
court reversed the judgment of the circuit court in an
unpublished opinion.[6]  Lynchburg Div. Soc. Servs. v. Cook, No.

_____

you do the Review Hearing?  Because there won't be a Foster Care
Plan."  The court replied, "No, there won't be; they don't need
to be involved."

     [6] The LDSS contended in the Court of Appeals that the
Juvenile and Domestic Relations Court, and consequently the

6

2792-05-3 (Feb. 6, 2007). The panel majority determined that the circuit court erred in awarding custody of BC to the Grandparents because the specific fact-finding requirements under the applicable foster care statutes were not made. Id., slip op. at 9-12. The panel majority also held that the circuit court erred in awarding custody without conducting the permanency planning hearing and terminating the LDSS's involvement in the case. Id. at 13.

Upon rehearing en banc, the en banc majority of the Court of Appeals affirmed the judgment of the circuit court.[7] Lynchburg Div. of Soc. Servs. v. Cook, 50 Va. App. 218, 228, 648 S.E.2d 328, 333 (2007). The en banc majority noted the provision of Code § 16.1-241(A) stating that "[t]he authority of the juvenile court to consider a petition involving the custody of a child shall not be proscribed or limited where the child has previously been awarded to the custody of a local board of social services" and then referenced the provision in Code § 16.1-278.15 authorizing the court in a custody case under Code

circuit court, lacked "jurisdiction" to consider the Cooks' various custody petitions because none of those parties asked for custody under a Code § 16.1-282 foster care review petition. The Court of Appeals, without dissent, determined the Juvenile and Domestic Relations Court had subject matter jurisdiction over the custody petitions. The LDSS does not raise this issue on appeal to this Court.

[7] Neither the panel nor en banc opinions addressed the sufficiency of the evidence issue raised by the LDSS.

7

§ 16.1-241(A)(3) to "make any order of disposition . . . as may be made by the circuit court." Id. at 225, 648 S.E.2d at 331 (emphasis in original). Observing that the Grandparents had filed their custody petition under Code § 16.1-241(A)(3), the majority concluded the "any order" language of Code § 16.1-278.15 authorized the juvenile and domestic relations district courts and circuit courts to award custody of BC without meeting any of the finding requirements in the foster care statutes:

> In Code §§ 16.1-241(A) and 16.1-278.15(B), the General Assembly has stated unequivocally that the JDR court's authority to consider such a petition is not "proscribed or limited" by the fact that "custody of the child has previously been awarded to [DSS]." Consequently, through these provisions, the General Assembly has made the foster care plan statutes subordinate to the statutes under which the Cooks were awarded custody of their granddaughter, and did not conflate the two statutory schemes.
> Given that the courts below had the authority to adjudicate the Cooks' petition and award them custody apart from the foster care plan, the courts also correctly applied the "best interest of the child" standard in making that award, pursuant to Code §§ 16.1-278.15(F), 20-124.2(B), and 20-124.3, rather than the standard for approving foster care parents, which did not apply.[8]

Id. at 226, 648 S.E.2d at 332 (alteration in original).

---

[8] The en banc majority further explained their reasoning in a footnote: "In other words, the courts below were not compelled, as DSS contends, to apply the standards and make the findings required for placing a child with a relative as a foster care parent, pursuant to Code §§ 16.1-281(C1), 16.1-282(D1), and 16.1-282.1(A1)." Id. at 226 n.8, 648 S.E.2d at 332 n.8.

8

Thus, in the en banc majority's view, the general "best interests of the child" determination required under Code §§ 20-124.2 and 20-124.3 (collectively, the "general custody statutes") supersedes and replaces the findings required under the foster care statutes when a Code § 16.1-241(A)(3) custody petition is before the court.[9] Id. at 226-28, 648 S.E.2d at 332.

Echoing their panel majority opinion, the two en banc dissenting judges observed that the specific foster care statutes applicable to a child who, like BC, was statutorily subject to a foster care plan, do not reference the general custody statutes. The en banc dissent noted that each of the foster care statutes require that:

> Any order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is

---

[9] Three judges of the Court of Appeals concurred in the en banc majority opinion on the ground that the specific fact-finding required under the foster care statutes is "nevertheless subsumed in the best interests analysis. Any finding, pursuant to the general custody statutes, that an award of custody to 'a relative other than the child's prior family,' Code § 16.1-282(D1), is in the child's best interests includes an implicit finding that the relative" meets the specific Code § 16.1-282(D1) requirements. Id. at 229, 648 S.E.2d at 333 (Elder, J., concurring).

9

willing and has the ability to protect the child from abuse and neglect; and the order shall so state.

Code §§ 16.1-281(C1), 16.1-282(D1), 16.1-282.1(A1) (emphasis added).

The dissent observed that the majority opinion failed to harmonize the general custody and foster care statutory schemes. The dissent saw those schemes, correctly read, as not in conflict; thus the majority's conclusion that the foster care statutes were "subordinate" to the general custody statutes was erroneous. Rejecting the majority's construction of Code § 16.1-278.15(B), the dissent noted "placement with DSS does not proscribe or limit the circuit court's ability to consider a petition for custody. In other words, the child's placement does not remove the trial court's jurisdiction over issues such as custody." 50 Va. App. at 234, 648 S.E.2d at 335 (Humphreys, J., dissenting).

Concluding, the en banc dissent observed:

Code § 16.1-281 was not intended to "divest" the trial court of jurisdiction over the custody matter, nor was it intended to limit or proscribe the trial court's authority to entertain the custody matter. Nor does Code § 16.1-281 limit the trial court to considering just the foster care plan or the objectives set forth by DSS. In fact, Code § 16.1-241 makes it perfectly clear that the trial court has jurisdiction over custody matters. . . . [W]hen read in conjunction with the other pertinent statues, Code § 16.1-281 simply requires that when the custody of an abused and neglected child is at issue, the trial court must make specific written findings of fact, designed to protect the child from the dangers for which he or she was

10

removed from the home. See Code §§ 16.1-281, 16.1-282, 16.1-282.1. In other words, the trial court is free to decide the issue of custody as it sees fit, so long as it incorporates into the record [the required findings of the foster care statutes].

50 Va. App. at 235-36, 648 S.E.2d at 336 (Humphreys, J., dissenting) (emphasis in original).

The en banc Court of Appeals denied the Grandparents' request of an award under Code § 16.1-278.19 for the attorney's fees and costs incurred by them in that court: "[W]e cannot say DSS's position in this case was unreasonable . . . because the litigation addressed appropriate and substantial issues . . . ." Id. at 228, 648 S.E.2d at 332 (internal quotation marks omitted).[10] We awarded the LDSS an appeal and also awarded the Grandparents an appeal on their assignment of cross-error regarding the denial of attorney's fees.

## II. ANALYSIS

The LDSS makes two assignments of error to the judgment of the Court of Appeals. Initially, the LDSS contends the Court of Appeals erred by "holding that the detailed statutory scheme for custody of abused or neglected children . . . is 'subordinate' to the general custody and visitation provisions of Title 20,

---

[10] Apparently the Grandparents did not request an award of attorney's fees in either the Juvenile and Domestic Relations Court or the circuit court and no claim for an award relating to attorney's fees in those courts is before us in this appeal.

11

and in declining to enforce the requirements of Title 16.1." Because we find this assignment of error dispositive, we do not address the second assignment of error by the LDSS challenging the sufficiency of the evidence to support the award of custody to the Grandparents.

A.   THE FOSTER CARE AND GENERAL CUSTODY STATUTORY SCHEMES

The LDSS argues that the Court of Appeals erred in holding that "the General Assembly has made the foster care plan statutes subordinate to the statutes under which the Cooks were awarded custody of their granddaughter," 50 Va. App. at 226, 648 S.E.2d at 332, a child subject to a foster care plan and who had been found to have been abused or neglected.  The LDSS contends the Court of Appeals failed to harmonize the two statutory schemes, the foster care statutes and the general custody statutes, which the court saw as conflicting, and ignored the plain language of the more specific statutory scheme in unwarranted deference to statutes of general application.  As a result of the Court of Appeals' opinion, the LDSS argues any "person with a legitimate interest" under Code § 20-124.1 entitled to file a petition for custody of a child subject to a foster care plan could effectively circumvent the foster care statutes by simply filing a petition for custody.  Consequently, the LDSS contends the Court of Appeals' decision eliminates the statutory safeguards embedded in the foster care statutes

12

intended to protect vulnerable children like BC.  The LDSS concludes the General Assembly did not intend such "far-reaching and deleterious consequences" when it created the two statutory frameworks.  We agree with the LDSS.

The statutes governing foster care proceedings are detailed and require specific findings by the court at each stage of the process whether involving a child, like BC, found to be abused or neglected, or a child who is abandoned or otherwise within the statutory ambit.  In emergency situations, an allegedly abused or neglected child may be removed upon an order entered after an ex parte emergency removal hearing.  The petitioning party must prove that "[t]he child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result" without the removal and that "[r]easonable efforts have been made to prevent removal . . . and there are no alternatives less drastic than removal . . . which could reasonably protect the child's life or health pending a final hearing on the petition."  Code § 16.1-251(A).

A juvenile and domestic relations district court may also order the removal of an allegedly abused or neglected child by entering a preliminary removal order under Code § 16.1-252(A).  The party petitioning for removal must prove the same facts as required for an emergency removal order.  Code § 16.1-252(E).

Following the preliminary removal hearing, the juvenile and domestic relations district court may place the child in the custody of a suitable agency or of a suitable person under the supervision of the local department of social services. Code § 16.1-252(F).

The court must conduct a dispositional hearing within seventy-five days of the initial preliminary removal hearing. Code §§ 16.1-252(H), 16.1-278.2(A). As a result of the dispositional hearing, "[i]f the child is found to be . . . abused or neglected," the court may transfer custody subject to a foster care plan under Code § 16.1-281 "[a]fter a finding that there is no less drastic alternative." Code § 16.1-278.2(A). This statute also requires that:

> Any order transferring custody of a child to a relative . . . shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative . . . is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state.

Code § 16.1-278.2(A1) (emphasis added).

The juvenile and domestic relations district court must conduct a foster care plan hearing within seventy-five days of the dispositional hearing. Code § 16.1-281(C). While the court

14

may revise the foster care plan, "[a]ny order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence" of the same facts required to be found under Code § 16.1-278.2(A1), "and the order shall so state." Code § 16.1-281(C1) (emphasis added). Within six months of the foster care plan hearing, the court must conduct a foster care review hearing under Code § 16.1-282(A). However, "[a]ny order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence" of the same facts required to be found under Code §§ 16.1-278.2(A1) and 16.1-281(C1), "and the order shall so state." Code § 16.1-282(D1) (emphasis added).

The General Assembly has further mandated that the juvenile and domestic relations district court must conduct a permanency planning hearing within eleven months of the dispositional hearing "to establish a permanent goal for the child and either to achieve the permanent goal or to defer such action through the approval of an interim plan for the child." Code § 16.1-282.1(A). Again, "[a]ny order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence" of the same facts required to be found under Code

15

§§ 16.1-278.2(A1), 16.1-281(C1), and 16.1-282(D1), "and the order shall so state."  Code § 16.1-282.1(A1) (emphasis added).

Thus, once the foster care statutory process has commenced, the juvenile and domestic relations district court may not transfer custody of a child to a relative, other than the child's prior family, without making the four specific findings of fact required by Code §§ 16.1-278.2(A1) and the foster care statutes.  Those findings, under the plain terms of the statutes, must be stated in the order transferring custody.  Neither the Juvenile and Domestic Relations Court nor the circuit court did so in this case.

By comparison, the statutes of general application governing custody of a child are much less specific than the foster care statutory scheme.  For example, under Code § 16.1-278.15, titled "Custody or visitation, child or spousal support generally," subsection F requires "[i]n any case . . . the court shall consider the best interests of the child" and references Code §§ 20-124.1 et seq.  Code § 20-124.2(B) also states that "the court shall give primary consideration to the best interests of the child" and Code § 20-124.3 sets forth ten non-exclusive factors the court "shall consider."  However, in contrast to the findings required under Code § 16.1-278.2(A1) and the foster care statutes, there is no statutory requirement that a court's findings on the child's best interests under the

16

general custody statutes be stated in the resulting custody order.  See Code § 20-124.3 ("In determining best interests of a child for purposes of determining custody . . . [a] judge shall communicate to the parties the basis of the decision either orally or in writing.").

"Statutory construction is a question of law which we review de novo on appeal."  Parker v. Warren, 273 Va. 20, 23, 639 S.E.2d 179, 181 (2007) (citing Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006)).  "[C]ourts apply the plain language of a statute unless the terms are ambiguous." Boynton, 271 Va. at 227, 623 S.E.2d at 926 (citing Tiller v. Commonwealth, 193 Va. 418, 420, 69 S.E.2d 441, 442 (1952)); see also Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 439, 621 S.E.2d 78, 86-87 (2005) ("Courts are bound by the plain meaning of statutory language.").  "[I]f the language is plain, certain and unambiguous, so that no doubt arises from its own terms as to its meaning, then there is no room for interpretation."  Boynton, 271 Va. at 228 n.10, 623 S.E.2d at 926 n.10 (quoting Golden Valley County v. Lundin, 203 N.W. 317, 319 (N.D. 1925)).

"[W]henever 'a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each.' " Boynton, 271 Va. at 229, 623 S.E.2d at 927 (quoting Ainslie v.

17

*Inman*, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003)); *see also* *Commonwealth v. Zamani*, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998) ("[W]hen two statutes seemingly conflict, they should be harmonized, if at all possible, to give effect to both."). A cardinal rule of statutory interpretation is that "[w]hen one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict, the more specific statute prevails." *Alliance to Save the Mattaponi*, 270 Va. at 439-40, 621 S.E.2d at 87.

As illustrated above, the foster care statutes are much more specific and contain mandatory findings that must be made by the court when custody of a child is placed with "a relative other than the child's prior family," such as the Grandparents. The Court of Appeals failed to apply the plain language of the more specific statutory requirements of the foster care statutes and give those provisions effect in a custody proceeding involving a child subject to a foster care plan. When the Court of Appeals concluded the foster care statutes were "subordinate" to the general custody statutes in that circumstance, it also erred by not reading those statutes in harmonious effect with the general custody statutes.

The Court of Appeals mistakenly read certain language in Code §§ 16.1-241(A) and 16.1-278.15(B) as subordinating the

18

foster care statutes to the general custody statutes.  Both Code

§ 16.1-241(A) and 16.1-278.15(B) contain the following language:

"The authority of the juvenile court to consider a petition

involving the custody of a child shall not be proscribed or

limited where the child has previously been awarded to the

custody of a local board of social services."  The Court of

Appeals read this statutory provision in conjunction with the

Code § 16.1-278.15(A) provision that "the court may make <u>any</u>

order of disposition" in a Code § 16.1-241(A)(3) custody case as

eliminating any application of the foster care statutes to the

custody determination of BC.  However, the "shall not be

proscribed or limited" language merely confirms the Juvenile and

Domestic Relations Court's authority to exercise its

jurisdiction, granted by Code § 16.1-241, in a custody case

involving a child subject to a foster care plan.  Nothing in

that language reflects any curtailment of the application of the

foster care statutes.

The en banc dissent succinctly described the interrelation

of these statutory schemes, and why the Court of Appeals

conclusion was erroneous, when it noted that the foster care

statutes do not

> limit the trial court to considering just the foster
> care plan or the objectives set forth by DSS. In fact,
> Code § 16.1-241 makes it perfectly clear that the
> trial court has jurisdiction over custody
> matters. . . .   [W]hen read in conjunction with the

other pertinent statues, Code § 16.1-281 simply requires that when the custody of an abused and neglected child is at issue, the trial court must make specific written findings of fact, designed to protect the child from the dangers for which he or she was removed from the home. See Code §§ 16.1-281, 16.1-282, 16.1-282.1. In other words, the trial court is free to decide the issue of custody as it sees fit, so long as it incorporates into the record a finding that [states the requirements of the foster care statutes].

50 Va. App. 235-36, 648 S.E.2d at 336 (Humphreys, J., dissenting).

The requirement that the trial court make the findings mandated by the foster care statutes in no way "proscribe[s] or limit[s]" the authority of the Juvenile and Domestic Relations Court to exercise its subject matter jurisdiction over child custody cases. To the contrary, the statutory schemes of the foster care and general custody statutes are harmonized, and the plain meaning of the more specific foster care statutes is applied, when the trial court adjudicates a custody case involving a child subject to a foster care plan by making the required foster care statutory findings and stating those findings in its order.

The Court of Appeals' reliance on the Code § 16.1-278.15(A) provision that the "court may make any order" as a form of plenary authority to ignore the foster care statutes is also misplaced. Code § 16.1-241(A) is the statutory grant of jurisdiction to the Juvenile and Domestic Relations Court in

20

custody cases. The Code § 16.1-278.15(A) language only applies in the Code § 16.1-241(A)(3) subset of custody cases which are of general application: "of controversy or requires determination." The Code § 16.1-278.15(A) language merely provides that the Juvenile and Domestic Relations Court's authority in Code § 16.1-241(A)(3) custody cases is as extensive as that of the circuit court: it in no way applies any limitation on the applicability of the foster care statutes. Moreover, the jurisdictional basis in BC's case was more appropriately Code § 16.1-241(A)(1), which is the specific jurisdictional statute applicable to custody of a child "who is alleged to be abused [or] neglected." As the en banc dissent noted, the Court of Appeals' expansive reading of Code § 16.1-241(A)(3) through Code § 16.1-278.15(A) "renders Code § 16.1-241(A)(1) meaningless." 50 Va. App. at 233, 648 S.E.2d at 335.

The only interpretation of the relevant provisions of Title 16.1 and Title 20 that gives effect to both statutory schemes, and the intent of the General Assembly, is that a trial court must make the specific factual findings required by the foster care statutes in a custody case involving a child subject to a foster care plan. The interpretation offered by the Court of Appeals would permit any "[p]erson with a legitimate interest" under Code § 20-124.1 entitled to file a petition for custody to circumvent a pending foster care proceeding. Such a general

21

custody exception to the statutory provisions governing foster care proceedings would eviscerate the General Assembly's detailed framework intended to safeguard a child, like BC, who was subject to a foster care plan.

Once a child has become subject to proceedings under the foster care statutes, a court may not transfer custody without the specific, written factual findings required by the foster care statutes. This statutory mandate holds true whether the custody order is entered upon a petition for custody, a petition for a foster care review hearing, or a petition for a permanency planning hearing. An award of custody without such findings, as in the case at bar, is error as a matter of law.

Moreover, it is contrary to the clear and plain language of the foster care statutes to conclude those specific statutory findings are subsumed by findings under the best interests of the child standard. For example, each of the foster care statutes requires a finding that the child's relative seeking custody "is willing and has the ability to protect the child from abuse and neglect." That distinct and required finding is not within any mandated parameter of the best interests of the child inquiry and such a finding was clearly not made in the case at bar. Allowing the best interests of the child standard to subsume these explicit statutory requirements would render those requirements meaningless and write out of the foster care

statutes the mandatory directive that "the order shall so state." We avoid such interpretations. "The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word . . . ." Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). "[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998).

For the foregoing reasons, we conclude the Court of Appeals erred in affirming the judgment of the circuit court which awarded custody of BC to the Grandparents.

### B. ATTORNEY'S FEES

The Grandparents assign as cross error the denial by the Court of Appeals of an award of attorney's fees under Code § 16.1-279.1 for the fees relating to their appeal in that court. Ordinarily, when a claim for attorney's fees is cognizable, we review a refusal to award attorney's fees for abuse of discretion. Wilkerson v. Wilkerson, 214 Va. 395, 398, 200 S.E.2d 581, 584 (1973); Monahan v. Monahan, 212 Va. 406, 408, 184 S.E.2d 812, 813 (1971). A " 'court by definition abuses its discretion when it makes an error of law. . . . The

23

abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' " Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

Code § 16.1-278.19 provides that "the court may award attorney's fees and costs on behalf of any party as the court deems appropriate based on the relative financial ability of the parties."  The Court of Appeals has determined that it may order the award of appellate attorney's fees and costs under that statute.  Cartwright v. Cartwright, 49 Va. App. 25, 31, 635 S.E.2d 691, 694 (2006); Gottlieb v. Gottlieb, 19 Va. App. 77, 95-96, 448 S.E.2d 666, 677 (1994).  However, the Court of Appeals did not base its decision in the case at bar upon the statutory factor of the "relative financial ability of the parties."  Instead, the Court of Appeals enunciated a non-statutory standard, which was that the Grandparents were not entitled to attorney's fees because the position of the LDSS was not unreasonable.  50 Va. App. at 228, 648 S.E.2d at 332-33 ("[W]e cannot say DSS's position in this case was unreasonable . . . because the litigation addressed appropriate and substantial issues . . . .  Therefore, we do not award attorney's fees associated with this appeal.").

In so much as the Court of Appeals made its determination without regard to the statutory standard, but used a standard

not set forth in the statute, it erred as a matter of law in rejecting the attorney's fees claim of the Grandparents.[11]

### III. CONCLUSION

For the reasons stated, we will reverse the judgment of the Court of Appeals which affirmed the judgment of the circuit court awarding custody of BC to the Grandparents. We will also reverse the judgment of the Court of Appeals denying the attorney's fees claim of the Grandparents. We will remand the case to the Court of Appeals with instructions to remand the case to the circuit court for further proceedings in accordance with this opinion. Such proceedings include the application of the proper statutory standards for the determination of the custody of BC and whether attorney's fees should be awarded the Grandparents with regard to the appellate proceedings in the Court of Appeals and this Court. Pending such hearing and further order of the circuit court, custody of BC shall remain with the Grandparents with visitation to Amy Cook and Jimmy Cook, respectively, as set forth in the circuit court's order of November 22, 2005.

<u>Reversed and remanded</u>.

---

[11] We address in this opinion only the statutory standard under Code § 16.1-278.19 and express no opinion as to whether the Grandparents, on remand, are entitled to any attorney's fees and costs upon application of the proper standard.

25