COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


QUIANA SUMMERS

                                                      MEMORANDUM OPINION[*] BY
v.       Record No. 1923-08-4               JUDGE ROBERT J. HUMPHREYS
                                                            JUNE 23, 2009
ALEXANDRIA DEPARTMENT OF
  HUMAN SERVICES


                   FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                                    John J. McGrath, Judge

              Stephen F. Moller for appellant.

              (Richard F. Gibbons, Jr.; Lilian Shepherd, Guardian *ad litem* for the
              minor children; Richard F. Gibbons, Jr., P.L.C., on brief), for
              appellee.  Appellee and Guardian *ad litem* submitting on brief.


        Quiana Summers ("Summers") appeals from a decision of the Circuit Court of the City of

Alexandria, which terminated her residual parental rights in her children pursuant to

Code § 16.1-283(C)(2).  On appeal, Summers argues that the circuit court erred in terminating

her parental rights because it approved the goal of adoption with respect to each of her children

despite compelling evidence of a viable interested relative placement.[1]  We disagree with

Summers and affirm.

        "When addressing matters concerning a child, including the termination of a parent's

residual parental rights, the paramount consideration of a trial court is the child's best interests."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Summers had two children.  The oldest was born on November 2, 1999 and the
youngest on February 7, 2003.

(1991). Code § 16.1-283(C) allows a court to terminate the residual parental rights of a parent of a child placed in foster care as a result of an entrustment agreement if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> the parent . . . without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

The issue in this case does not concern the circuit court's findings with respect to Code § 16.1-283(C)(2). Rather, the issue concerns whether or not the circuit court adequately considered granting custody of the children to relatives prior to terminating Summers' parental rights and approving the goal of adoption. "Code § 16.1-283(A) provides that, in a termination of parental rights case, 'the court shall give a *consideration* to granting custody to relatives of the child, including grandparents.'" Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217, 597 S.E.2d 214, 220 (2004) (quoting Code § 16.1-283(A)) (emphasis added). The duty rested with the Alexandria Department of Human Services ("DHS") "to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Id. (quoting Logan, 13 Va. App. at 131, 409 S.E.2d at 465). In making this determination, "[t]he trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986)).

- 2 -

Summers contends that the circuit court erred when it approved the goal of adoption with respect to each of her children, because "there was compelling evidence of a viable interested relative placement."  Summers further contends that the circuit court was presented with no evidence to explain why the children could not be placed with Teresa Hardy ("Hardy"), Vincent Moody ("Moody") or Monica Riddle ("Riddle").[2]  We disagree with Summers' contentions and hold that the circuit court did consider granting custody of the children to relatives and that the record contains sufficient evidence to support the circuit court's decision to approve the goal of adoption.

The record reveals that DHS thoroughly investigated the possibility of placing Summers' children with Hardy.  The circuit court heard extensive testimony from caseworker Stephanie Morrow ("Morrow") concerning Hardy's suitability as a relative placement.  In addition, DHS conducted a home study of Hardy's residence, which was completed on December 3, 2007.  Though the home study recommended that Hardy be given the opportunity to care for the children, it did raise some concerns about placing the children in her custody, namely that Hardy did not fully appreciate the severity of Summers' situation and that, as a result, she might expose the children to Summers prematurely.  Despite these concerns, DHS encouraged Hardy to arrange visitation with the children "as much as possible."  Morrow, in particular, wanted Hardy to "become as involved as a parent would be in the life of the children."  However, Hardy never demonstrated this level of commitment.  Between November of 2007 and January of 2008, Hardy took the children just five times.  Then, in January of 2008, Hardy suspended all future visitations with the children, stating that she was "frustrated" with DHS.

The record also reveals that neither Moody nor Riddle were interested in being considered as relative placements for Summers' children.  Caseworker Anita Wyatt ("Wyatt")

---

[2] Hardy, Moody, and Riddle were all relatives of Summers' children.

specifically testified that Moody was not interested in relative placement. In fact, Moody contacted Wyatt about the possibility of *adopting* Summers' children. However, Moody did not complete the requirements to become eligible to adopt. Riddle also contacted DHS about adopting the children. However, Riddle indicated that she only wished to be considered as a backup to Moody. Like Moody, Riddle did not complete the requirements for adoption.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Social Services, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). By the time of the hearing before the circuit court, Summers' children had been in foster care for almost two years. During the hearing, Morrow testified as to the concerns DHS had with placing the children with Hardy, namely, that she lacked the requisite level of commitment and that she may expose the children to Summers prematurely. DHS also presented testimony that Moody and Riddle were not interested in being considered as relative placements, but wanted to adopt Summers' children instead. "'[A]s required by statute, the trial court was presented with evidence for its consideration as to the suitability of placing [Summers' children] with relatives [Hardy, Moody, and Riddle] before it ordered the termination of appellant['s] parental rights.'" Brown, 43 Va. App. at 219, 597 S.E.2d at 221 (quoting Hawthorne v. Smyth County Dep't of Social Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000)). Given the evidence contained in the record, we cannot hold that the circuit court did not consider granting custody of the children to relatives, as required by Code § 16.1-283(A). Thus, its decision to terminate Summers' residual parental rights and approve the goal of adoption was not plainly wrong.

During oral argument, Summers argued that the circuit court was required to make specific factual findings as to why Hardy, Moody, and Riddle were inappropriate as relative

placements before it could approve the goal of adoption.[3]  However, Summers never presented this argument to the circuit court and raises it on appeal for the first time.  "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  This is because "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.

At no point did Summers argue to the circuit court that it was required to make specific factual findings with respect to why Hardy was not suitable as a relative placement.  Instead, Summers merely argued that relative placement was the appropriate goal and "Hardy is an appropriate relative" for such placement.  Moreover, Summers signed each of the four orders issued by the circuit court "Seen and Objected to," without providing any additional grounds for her objection.[4]  At most, Summers' endorsement of the orders "Seen and Objected to" preserved the issue of whether or not the circuit court adequately considered granting custody of Summers' children to relatives prior to terminating her residual parental rights.  See Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 927 (2000) (stating that the endorsement of an order "Seen and Objected to" "'is sufficient to satisfy Rule 5A:18 only if the ruling made by the trial court

---

[3] In response to a question from the Court during oral argument, Summers indicated that our Supreme Court's decision in Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 666 S.E.2d 361 (2008), required the circuit court to make specific factual findings as to why Hardy, Moody, and Riddle were inappropriate as relative placements before approving the goal of adoption with respect to Summers' children.  Though Code § 16.1-283(A1) does contain the same language as the statutes at issue in Cook, the requirements imposed by that subsection only apply when the court order "transfer[s] custody of the child to a relative or other interested individual . . . ."  Code § 16.1-283(A1).  Here the circuit court did not transfer custody of Summers' children "to a relative or other interested individual."  Therefore, the requirements of Code § 16.1-283(A1) would not apply.

[4] An order for involuntary termination of residual parental rights and a permanency planning order were entered for each child.

was narrow enough to make obvious the basis of appellant's objection'" (quoting <u>Mackie v. Hill</u>, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993)).  Thus, Summers' argument that the circuit court was required to make specific factual findings with respect to Hardy's suitability as a relative placement was not properly preserved for appeal.

For the foregoing reasons, we hold that the circuit court did not err in terminating Summers' residual parental rights and approving the goal of adoption.  Thus, we affirm.

<u>Affirmed.</u>