# CIRCUIT COURT OF THE CITY OF NORFOLK

AMG National Trust Bank

v.

Commonwealth of Virginia,
Department of Taxation

Case No. CL10-3031

BY JUDGE MARY JANE HALL

April 7, 2011

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment. Plaintiff, AMG National Trust Bank, has filed a Complaint for Declaratory Relief against the Department of Taxation seeking a determination that it is a bank for purposes of the Virginia Bank Franchise Tax Act, Va. Code § 58.1-1200. The parties have agreed to a joint stipulation of facts and have agreed that no material facts remain in dispute. They have agreed that this case presents a pure question of law and statutory interpretation that may be submitted to the Court for summary judgment.

After consideration of the motions, the agreed stipulation of facts, and the arguments of counsel, the Court hereby grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

*Background*

This controversy arises out of a letter ruling issued by the Tax Commissioner on March 10, 2010, on the applicability of the Virginia Bank Franchise Act (the "Act") to AMG. The Department had rejected AMG's 2009 bank franchise tax return on the ground that AMG did not meet the

definition of "bank" contained in the Act. In her ruling, attached as Exhibit A to the Complaint, Commissioner Bowen determined that AMG was not conducting a banking business in Virginia because the Virginia branch did not accept deposits. She ruled that AMG was therefore not subject to the bank franchise tax, and she directed AMG to file corporate income tax returns for all the years that its trust office has operated in Virginia. AMG asks the Court to determine that it is a "bank" within the meaning of the Act and to order associated relief.

The parties have stipulated to the facts, as follows.

AMG was chartered as a national banking association pursuant to the National Bank Act, 12 U.S.C. §§ 21 et seq., in August, 2001 and maintained that charter continuously throughout 2004 to 2009. As a national banking association, AMG had the authority under 12 U.S.C. § 24 to make loans and accept deposits from February 1, 2008, to 2009. The years in question in this case are 2004, 2005, 2006, 2007, 2008, and 2009. No other years are in question. Stip. of Facts at ¶¶ 1, 2.

AMG was a member of the Federal Reserve System under the Federal Reserve Act, 12 U.S.C. § 221 et seq., continuously throughout 2004 to 2009. AMG was an Insured Bank and a member of the Federal Deposit Insurance Corporation ("FDIC") under 12 U.S.C. §§ 1811 et seq., as amended, continuously from February 1, 2008, through December 31, 2009. AMG held itself out to the general public as engaged in the banking business continuously from 2004 to 2009. *Id.* at ¶¶ 3-5.

AMG had an office in Norfolk continuously from March 1, 2004, through 2009 known as Old Dominion Trust Company. Old Dominion Trust Company was merged into AMG on March 1, 2004. AMG did business in Virginia through its Norfolk office, d/b/a Old Dominion Trust Company, offering trust services and investment management services, continuously from March 1, 2004, through 2009. *Id.* at ¶¶ 6-9. Both trust services and investment management services are traditional and historical parts of banking. *Id.*, ¶¶ 10-11.

AMG established Old Dominion Trust Company as a branch through an Application for Permission to Acquire Voting Shares of a Virginia Trust Company Pursuant to Chapter 13 of Title 6.1 of the Code of Virginia (later recodified as Chapter 7 of Title 6.2 of the Code of Virginia). From February 1, 2008, through December 31, 2009, AMG, d/b/a Old Dominion Trust Company, began to offer loans and accept deposits from Virginia customers. As of December 31, 2008, AMG had deposits of approximately $155,000,000. *Id.* at ¶¶ 12-13,

AMG, d/b/a Old Dominion Trust Company, neither solicited nor accepted deposits at its Virginia office from January 1, 2004, through January 31, 2008. After January 31, 2008, AMG, d/b/a Old Dominion Trust Company, solicited deposits and loans from its Virginia office but did not

accept deposits or loans at that location. Deposits and loans were accepted at its main banking office in Boulder, Colorado. *Id.* at ¶ 14.

AMG was previously known as AMG Guaranty Trust, N.A. Its holding company AMG National Corp. was previously known as AMG Guaranty Corp. AMG has its main office in Boulder, Colorado. During the years at issue, AMG had offices in Norfolk, Denver, Chicago, and Morristown, New Jersey. AMG filed bank franchise tax returns in Virginia for the 2005 through 2009 tax years. At the suggestion of a representative of the Department of Taxation in 2005 and as disclosed in each Virginia tax return filing, AMG used an alternative method of apportionment to compute its capital attributable to Virginia. At the insistence of the Department of Taxation, in 2010, AMG filed Virginia income tax returns for 2004 to 2009. *Id.* at ¶¶ 15-19.

Finally, the parties stipulated that their terms "bank," "banking," and "branch" are not intended to have any particular statutory meaning. Neither party conceded that the use of a particular term establishes the application of any statute, except where a specific statute is referenced. *Id.* at ¶ 19.

*Analysis*

The Virginia Bank Franchise Act (the "Act") requires every bank or trust company to pay annual franchise taxes, which the Department of Taxation calculates based on the net capital of the company. This tax is paid in lieu of all other state or local taxes in Virginia. Va. Code Ann. § 58.1-1202. The statute provides four separate definitions of "bank," plus a fifth exclusionary clause:

"Bank" means:

> (1) Any incorporated bank, banking association, savings bank that is a member of the Federal Reserve System, or trust company organized by or under the authority of the laws of the Commonwealth;
> (2) Any bank or banking association organized by or under the authority of the laws of the United States, doing business or having an office in the Commonwealth or having a charter which designates any place within the Commonwealth as the place of its principal office;
> (3) Any bank which establishes and maintains a branch in this Commonwealth under Article 5.1 (§ 6.1-44.1 et seq.) of Title 6.1 or Article 5.2 (§ 6.1-44.15 et seq.) of Title 6.1, whether such bank or banking association is authorized to transact business as a trust company or not;

(4) Any joint stock land bank or any other bank organized by or under the authority of the laws of the United States upon which the Commonwealth is authorized to impose a tax;

(5) The term shall exclude all corporations organized under the laws of other states and doing business in the Commonwealth, corporations organized not as banks under the laws of the Commonwealth, and all natural persons and partnerships.

Va. Code Ann. § 58.1-1201.

AMG appears to meet the definition of "bank" under the second and fourth clauses of the definition, and it is not excluded by the fifth. In determining otherwise, the Department points out that the above statute uses the word "bank" to define "bank;" and the Court must necessarily look to the definition of "bank" included in the Virginia Banking Act: "a corporation authorized by statute to accept deposits and to hold itself out to the public as engaged in the banking business in this Commonwealth." Va. Code § 6.2-800. Applying this definition, the Department argues that AMG is not a "bank" because it does not accept deposits in Virginia.

The Department also advances its own interpretation of the Act, arguing "doing business or having an office in the Commonwealth" (the second clause of the definition) requires that a bank "maintain an office in this Commonwealth for the conduct of banking business." To arrive at the conclusion that AMG does not "conduct banking business" in Virginia, the Department cites Va. Code § 58.1-1204.1, "Proration for new banks," which states: "For purposes of this section, 'transacting business' shall mean accepting deposits from customers in the regular course of doing business." The Department urges the Court to adopt its conclusion that, for purposes of the Act, an entity that does not accept customer deposits is not a bank.

The Court declines to import the definition of "bank" from the Virginia Banking Act into the definitional section of the Virginia Bank Franchise Act. The definition of "bank" in the Virginia Banking Act is significantly shorter and less detailed than the definition of a bank within the Virginia Bank Franchise Act. "A cardinal rule of statutory interpretation is that `[w]hen one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict, the more specific statute prevails'." *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 481, 666 S.E.2d 361, 369 (2008) (quoting *Alliance to Save the Mattaponi v. Commonwealth*, 270 Va. 423, 439-40, 621 S.E.2d 78, 87 (2005)).

The definition of "bank" in the Act is more specifically applicable to the issues presented in this case than the definition of "bank" which the

Department relies on, included in Virginia Code Title 6.2 — Financial Institutions and Services. Because the statutes have different definitions of a "bank," the more specific statute should prevail. In this case, the Virginia Bank Franchise Act is the more specific statute because this case deals with that precise statute and the issue of whether AMG is required to file a bank franchise tax return.

The Court rejects the Department's conclusion that, "in order to be conducting a banking business in Virginia, a bank must be accepting deposits from customers in the regular course of doing business." Plaintiff's Exhibit A at 3. The General Assembly did not include that requirement in the statute. Moreover, the statute expressly permits the definition of "bank" to include trust companies, which are not authorized to accept deposits. See Va. Code § 6.2-1000.

The Court holds that AMG is a bank as defined in the Act pursuant to Virginia Code § 58.1-1201. AMG has asked for additional relief in its Complaint but has not addressed those additional requests in its motion or in the Stipulation. If the parties cannot resolve those remaining issues in light of the Court's ruling herein, counsel should advise the Court of the issues remaining for resolution and put this matter back on the Court's docket.

July 6, 2011

The matter comes before the Court on the remaining issues raised by the Complaint for Declaratory Judgment in this matter. The parties are proceeding on stipulated facts, which are recited in the Court's prior letter opinion of April 7, 2011.

This case involves the interpretation of the Virginia Bank Franchise Tax Act, Va. Code § 58.1-1200. The difficulty presented by the facts at bar primarily arise from the fact that the statute fails to address or instruct how the bank franchise tax is to be calculated for an interstate bank with a branch office in Virginia.

The Commissioner previously urged the Court to reject the conclusion that AMG is a "bank" within the meaning of the Act because AMG does not accept deposits in Virginia. The definitional section of the Act, however, includes no requirement that an entity accept deposits in order to be considered a bank, and indeed, it specifically includes trust companies, which are not authorized to accept deposits, to be defined as banks for purposes of the statute. By its prior letter ruling, the Court ruled that AMG is a "bank" within the meaning of the Act and therefore subject to the bank franchise tax.

At the hearing on the Department's motion to reconsider, held on June 7, 2011, Defendant asked the Court to reconsider or, in the alternative, to clarify its ruling in a manner to provide guidance to the Commissioner on

how to collect the bank franchise tax from an interstate banking corporation with a branch office in Virginia:

> The Department files this motion to request that the Court clarify its decision as to the impact that AMG's status as a bank under Va. Code § 58.1-1201 has on its liability for payment of corporate income tax, state and local bank franchise tax, and other taxes. Should the Court hold that AMG is subject to the bank franchise tax, the Department requests guidance as to how such tax should be administered and apportioned for both state and local purposes, in light of the fact that AMG does not accept deposits at the Virginia location, which is the statutory basis of bank franchise tax apportionment for local purposes and the published administrative method for apportionment among the states.

Defendant's Motion to Reconsider at 1-2, (May 19, 2011).

The Act assesses tax on banks based upon the net capital of the bank. The Act fails to specify a means for apportioning the total net capital of a multi-state bank to the Virginia portion of that capital that may be subject to Virginia tax liability. Cognizant of the Constitutional limitations on calculating Virginia tax liability on the entire net capital of a multi-state bank and with no statutory direction on how to prorate the bank's total net capital to arrive at the portion that may be subject to Virginia tax, the Department has adopted a method that models the statutory procedure for apportioning tax between branch offices of banks located in two or more political subdivisions of Virginia. Section 58.1-1211 permits a branch office to apportion the taxable value of its net capital to the proportion that represents the total deposits of the office within the political subdivision to the total deposits of the bank.

The Instructions provided by the Department of Taxation which accompany the Forms and Schedules for filing a Virginia Bank Franchise Tax offer this advice regarding a Virginia office of a multi-state bank:

> In the event that a multi-state bank becomes subject to the Virginia Bank Franchise Tax, TAX permits those accepting deposits at branch offices in another state, including the District of Columbia, to apportion net capital based on a deposit oriented methodology similar to that currently specified by the General Assembly for apportionment among Virginia localities. . . .
>
> Those that do not accept deposits must request permission to use an alternative method of apportionment from the Tax

Commissioner. In order to request an alternative method, the bank must:

1. File a return using the alternative method of apportioning capital;

2. Provide a statement of why the statutory method is inapplicable or inequitable as applied to the taxpayer; and

3. Submit an explanation of the proposed method of apportionment in sufficient detail for the department to make a meaningful review.

Virginia Bank Franchise Tax 2011 form 64, Schedules and Instructions, Plaintiff's Exhibit 1.

Consistent with the Instructions quoted above, AMG filed returns using an apportionment method that apportions its net capital according to its costs of performance. It did provide the required statement of why the statutory method is inapplicable and the required explanation of the proposed method of apportionment. AMG claims that a Department representative orally instructed the bank over the telephone to use this apportionment method. The Department does not stipulate that it provided this advice, and it argues that AMG's proposed alternative method has never been approved. The Department did not provide its response to AMG's request for approval of its proposed method of apportionment, apparently because of the issuance of the Letter Ruling of March 1, 2010, that is the subject of the Complaint for Declaratory Judgment.

The Department argues that AMG's bank franchise tax liability under the Act is zero, because a proposed alternative method has not been approved for AMG. Opposing AMG's request for a declaratory judgment determining its nonliability for corporate income tax, the Department argues that a bank with no liability for a bank franchise tax may be assessed a corporate income tax.

Virginia Code § 58.1-400 et seq. addresses the taxation of corporations. Section 58.1-401 provides: "No tax levied pursuant to §§ 58.1-400, 58.1-400.1, or 58.1-400.2 is imposed on. . . . 3. State and national banks, banking associations, and trust companies *to the extent such companies are subject to the bank franchise tax on net capital*." The Department argues that if a bank's liability for a bank franchise tax is $0, then that bank is not "subject" to the bank franchise tax; and it may therefore be assessed a corporate income tax. AMG argues in opposition, that if a bank is "subject" to the bank franchise tax, it is exempt from corporate income tax irrespective of the amount of its bank franchise tax liability. The liability for the tax might be $0, but the bank is nonetheless "subject" to the tax.

The Court agrees with AMG's interpretation of the exemption in § 58.1-400.1. AMG is indeed "subject" to the bank franchise tax; and if its tax liability is zero, as the Department claims, that is only because the

Department has failed to approve an alternative method of apportioning AMG's net capital such that the tax may be assessed. Under an approved alternative method, the liability would not be zero.

The Court therefore holds that because AMG is "subject" to the bank franchise tax, it is exempt from corporate income tax liability. AMG's second, third, and fourth requests for declaratory relief from this Court ask for an order directing the Department to refund corporate income tax collected from AMG, prohibiting the Department from assessing corporate income tax from AMG in the future, and prohibiting the Department from assessing corporate income tax while this matter is pending. The Court finds that AMG is entitled to an Order granting that requested relief.

The Court addresses the Department's request for "guidance" that appears in its Motion to Reconsider, quoted in pertinent part above. The Department did not file its own request for declaratory relief on issues regarding assessment of the bank franchise tax against banks that accept no deposits in Virginia, and this issue is not ripe for determination. It appears to the Court, however, that the Department has consistently maintained that it has the authority to establish an alternative method of apportioning net capital for those banks that do not accept deposits in Virginia; and indeed it has advised the public that it has such authority. AMG has properly requested approval of an alternative method of apportionment, and, upon the Commissioner's approval of such request or direction to AMG to utilize a different method, nothing prevents the Department from collecting an appropriate amount of bank franchise tax from AMG.

In response to the Court's direction that the Department respond to AMG's request for approval of an alternative method of apportionment, the Department has filed a memorandum from Craig M. Burns, Tax Commissioner, detailing the three plausible methods for interstate banks to apportion capital. Which of those three methods the Department can or should employ is not before the Court, and the Court makes no ruling respecting that request. It does appear, however, that alternative methods are available to the Department for apportioning and assessing the bank franchise tax on interstate banking corporations. The dilemma that the Department has highlighted whereby AMG pays neither corporate income tax (because it is a bank) nor bank franchise tax (because it has no deposits in Virginia) will not exist if the Department approves an alternative method and directs that AMG use that method in calculating its bank franchise tax liability.

As Commissioner Burns' memorandum thoughtfully points out, the use of any non deposit-based method to ascertain bank franchise tax liability leads to other difficulties relating to apportionment of tax among Virginia localities. The Court makes no ruling about the Department's authority to specify alternative methods for apportionment that are not addressed by Va. Code § 58.1-1211 because that issue is not before the Court. The gaps in the

statute that have become obvious by the issues litigated in this case, do not mandate a determination that AMG's request for relief in this matter should be denied.

AMG's first four requests for declaratory relief are granted. Its fifth request, seeking attorneys' fees and costs, is denied.