COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Malveaux
Argued by videoconference

**PUBLISHED**

RYAN THOMAS PICK

v.      Record No. 1945-19-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY GRACE O'BRIEN
JANUARY 12, 2021

FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Vaughan C. Jones (Vaughan C. Jones Attorney at Law, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

In August 2018, police officers arrested Ryan Thomas Pick ("appellant") for felony charges

relating to two internet chats during which he made sexual overtures and sent a sexual video to a

police officer posing as an underage girl.  Appellant was charged with four counts of using a

communications system to procure a minor, in violation of Code § 18.2-374.3(B), and one count of

using a communications system to solicit a child believed to be less than fifteen years old, when the

accused is seven or more years older, in violation of Code § 18.2-374.3(C)(1).

Appellant filed a pre-trial motion to suppress the contents of the chats, arguing it was an

electronic communication obtained without a warrant in violation of the Virginia Wiretap Act, Code

§ 19.2-61 to -70.3 ("the wiretap act").  He also moved to suppress statements he made during a

police interview before his arrest.  The court denied both motions.

During a jury trial, at the conclusion of the Commonwealth's evidence, the court granted

appellant's motion to strike two of the four charges of violating Code § 18.2-374.3(B), because

appellant engaged in only two distinct internet chats with the officer. The jury convicted appellant of the remaining charges and sentenced him to seven years of incarceration. On appeal, appellant contends that the court erred by denying his motions to suppress, and he also argues that the evidence was insufficient to establish that he "[e]xpose[d] his sexual or genital parts to any child" in violation of Code § 18.2-374.3(C)(1).

BACKGROUND

In July 2018, Investigator Troy Payne of the Hanover County Sheriff's Office initiated an "undercover chat investigation" on the website Omegle, where users communicate anonymously with randomly selected strangers. Omegle allows users to "import [their] likes and interests from Facebook or . . . enter terms that [they] want to pair to chat with someone else," but users are unable to choose with whom they communicate.

For this investigation, Payne posed as a thirteen-year-old girl named "Lilly." At trial, Payne explained that the sheriff's office creates fake profiles for online investigations as "entire character[s]" complete with "name, appearance, clothing sizes, family things, things that someone online might ask[.]" The fake "Lilly" profile included "geomorph[]" pictures depicting a clothed female approximately twelve or thirteen years old.[1]

Initially, Payne was not targeting any specific individual. He listed Lilly's "interests" as "Richmond, Virginia[,] and Mechanicsville," and Omegle randomly paired him with another person who was later identified as appellant. Payne testified that because the chat was anonymous, he was

---

[1] Payne testified that the FBI Child Exploitation Task Force created the geomorph pictures by taking consensual pictures of children and combining "the face . . . from one child, the eyes from another, the body from another[,] so that no one child was actually used[.]" Facial recognition would not reveal the children's true identities. He stated that the children depicted in the geomorph pictures were supposed to appear between eleven and fourteen years old.

listed as "You" and appellant was listed as "Stranger." Payne recorded the contents of the chat by taking "screenshots" of his computer screen.

Appellant started a conversation by sending the message "M," which Payne understood to mean "male," and Payne responded "f" to indicate "female." Appellant asked for an age. Payne, posing as Lilly, answered that he was thirteen and named Lilly. Appellant stated that his name was Ryan and he was forty.

Appellant asked if Lilly wanted to "kik."[2] Payne responded as Lilly: "[P]arents took my phone for sneaking out lol[.]" Appellant stated that it was "probably just as well" because he was on the couch "being dirty" and "[j]erking off." He asked Lilly if she had a webcam so she could watch him and requested that she send him a picture of herself via email. Payne sent appellant a geomorph picture of Lilly via a Dropbox link.

Appellant commented that Lilly was gorgeous, asked, "Any more [I] can see?" and asked Lilly if she liked phone sex. Payne sent another geomorph picture of Lilly via a Dropbox link. Subsequently, the chat between Payne and appellant disconnected on Omegle.

Payne started a new Omegle chat and was randomly reconnected with appellant. At trial, Payne testified that he knew he reconnected with appellant because "[w]e both shared names again. I said I was Lilly, he said he was Ryan[,] and we both commented on the odds of us getting reconnected in a chat because it was anonymous." In the second chat with appellant, Payne again stated that Lilly was thirteen years old.

Appellant told Lilly that he "jerked off" while looking at her picture, and he complimented her legs, stating, "Wish [I] could see more of them[.]" He explained that he was nervous about

---

[2] Kik is a web-based application for chatting and sharing pictures and videos. Payne testified that Kik can be used to "continue to chat after being randomly paired on a site such as Omegle[.]"

sending a picture of himself because of his age; however, he continued to send explicit messages, discussing his desire to engage in oral sex with Lilly and describing the size of his penis. He also asked about the size of her breasts and stated that he would like to see them.

Appellant stated that he was a professional musician and music teacher who sang, played the flute, and composed. He also gave Lilly information about his ten- and six-year-old daughters.

Appellant sent additional sexually explicit messages and stated that he wanted to show Lilly his genitals. He sent a link to a Dropbox folder. At trial, Payne testified that the folder contained a video depicting

> an adult male with . . . kind of stocky forearms, strawberry blond arm hair, strawberry blond pubic hair holding his erect penis in his left hand masturbating while it appeared from the camera angle holding a phone in his right hand, had a blue wristband on his left arm holding his penis.

Payne testified that the video was approximately fifteen seconds long, and although he "tried to screenshot it[,]" it was "so short in length [that he] couldn't get the screenshot in time."

Appellant asked if Lilly liked the video and whether it got her "hot." He said he would take pictures "[w]hen we snapchat," alluded twice to the fact that he was masturbating, and stated, "I wish I could see parts of you naked." He asked, "How do I know you're not a cop LOL[?]" and indicated that he was "ne[r]vous after sending my vid you [know]?" Appellant ended the chat shortly thereafter.

Payne then performed Google searches to determine appellant's identity. Payne found the website PickMusic.org, "which was [appellant's] page advertising music services[.]" The website listed appellant's full name and described him as a music teacher, church music director, private music instructor, composer, and vocal and flute performer in the northern Virginia area.

Payne also found a Facebook photograph of appellant with his wife and two daughters at Disney World. The photograph depicted an adult male wearing a blue wristband who had the same

physical characteristics as the man in the Dropbox video. At trial, Payne testified that the blue wristband in the photo was "similar" to the wristband in the video.

In August 2018, a Virginia State Police SWAT team executed a search warrant at appellant's residence. Initially, appellant was handcuffed, but when Payne arrived, the SWAT team leader removed appellant's handcuffs, and appellant was told that he was not under arrest. Payne asked appellant if he could "speak to him privately in the rear of the command post,"[3] and he explained that the officers wanted to discuss "personal things about the internet."

Payne and appellant entered the command post, and Payne told appellant that he was free to sit wherever he wanted. Appellant was shown that the door was unlocked and instructed on "how the door of the command post operated." Appellant's access to the door was unobstructed. Two other officers were also in the command post. None of the officers was in uniform, and although they carried firearms and badges of authority, "everything [was] covered with a jacket."

Payne told appellant, "[Y]ou're free to leave the command post and not talk with us if you want to." Appellant, who was agitated, questioned why the police were there. When Payne "started speaking, [appellant] calmed down[,] but he was still somewhat hyperventilating."

The interview was recorded. Payne asked appellant if he "gets on any [i]nternet sites." Appellant answered, "The only site I ever go on is Omegle" and explained that he chatted on Omegle when he was bored or could not sleep. Payne explained that the police were at appellant's house because of his activity on Omegle. Payne indicated that someone with appellant's first name, and who said he was a music teacher, had an Omegle conversation in July with a young woman from the Richmond area named Lilly. Appellant indicated that he remembered the name "Lilly" but did not remember the conversation.

---

[3] The "command post" was a Virginia State Police mobile command center.

Maintaining that Lilly was a real person, Payne summarized appellant's Omegle chats with her, including appellant's comments about masturbation. Appellant responded, "[Y]eah, I was just being dirty." Payne continued the summary, and appellant stated, "[I]t's jogging my memory."

Approximately eleven minutes into the interview, appellant said, "I'd like to get an attorney, please." Payne stopped questioning appellant. He told appellant that the police had five arrest warrants for him. Appellant subsequently volunteered statements about his wife and the potential charges, and he stated that his "life [was] over, he'd never teach again . . . and that he needed help with texting and chatting issues."

The police seized a cell phone, iPad, and desktop computer from appellant's home office. Later, police took a Dell computer from the church where appellant worked as a music director. A forensic examination revealed that appellant's desktop and Dell computers had been used to access Omegle.

In April 2019, appellant moved to suppress the contents of his Omegle chats with Payne, contending that the chats were an electronic communication obtained in violation of the wiretap act. He argued that three people were involved in the internet chats: appellant, Payne, and Lilly, the "persona of a thirteen-year-old" girl. According to appellant, the only two parties who could consent to recording the conversations were appellant and the persona of Lilly, and therefore Payne was a third party who intercepted the conversations in violation of the wiretap act. The court denied the motion to suppress.

In August 2019, appellant moved to suppress the statements he made to police during the August 2018 police interview in the command post. He initially contended that the interview was a custodial interrogation and, therefore, he should have been advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), before being questioned. Referring to the standard to determine

custody, the court stated, "It is a reasonable person's belief that they were free to leave. Would you agree that's the legal standard?" Appellant's counsel agreed and responded,

> [T]hese officers do take some pains to say that ["]you are free to leave.["] They show [appellant] the points of egress, so I would concede that . . . it might not be the case that a reasonable person would not feel free to leave. . . . [W]hat I'm saying is he might have felt free to leave or a reasonable person might have felt free to leave when they say that you can.

Appellant's counsel then modified his argument, specifying that appellant was in custody after police revealed they had five arrest warrants for him. Appellant's counsel did not reassert his original custodial interrogation argument.

The court ruled that appellant was not in custody until the end of the interview when he was told that the police had arrest warrants for him. Appellant noted, "I continue my objection to it."

Appellant was convicted in a jury trial, and this appeal followed.

ANALYSIS

In his first two assignments of error, appellant contends the court erred by denying his motions to suppress. "On appeal of the denial of a motion to suppress, [this Court] view[s] the evidence in the light most favorable to the Commonwealth," as the prevailing party below. McCracken v. Commonwealth, 39 Va. App. 254, 258 (2002) (*en banc*). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," id. (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)), and gives "due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," McGee, 25 Va. App. at 198. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

However, "[s]tatutory construction is a question of law which we review *de novo* on appeal." Leftwich v. Commonwealth, 61 Va. App. 422, 427 (2013) (quoting Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 480 (2008)). "The primary object of interpreting a statute 'is to

ascertain and give effect to legislative intent.'" Id. (quoting Commonwealth v. Amerson, 281 Va. 414, 418 (2011)). Therefore, because we "presume that the legislature chose, with care, the words it used when it enacted the relevant statute," id. (quoting Seabolt v. Cnty. of Albemarle, 283 Va. 717, 720 (2012)), we "apply the plain language of a statute unless the terms are ambiguous," id. (quoting Cook, 276 Va. at 480).

### 1. Motion to suppress Omegle chats

Appellant argues that the court erred by denying his motion to suppress the contents of his Omegle chats, because Payne "interceded as a third party and intercepted messages transmitted by [appellant] intended for Lilly" without obtaining a warrant, in violation of Code § 19.2-62, a statute within the wiretap act.

Code § 19.2-62 provides, in pertinent part, that "any person who . . . [i]ntentionally intercepts . . . any wire, electronic or oral communication . . . shall be guilty of a Class 6 felony." Code § 19.2-62(A)(1), (4). "Intercept" is defined as "any . . . means of acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device[.]" Code § 19.2-61. Further, "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding . . . if the disclosure of that information would be in violation of [the wiretap act]." Code § 19.2-65.

However, Code § 19.2-62 provides a powerful "consent" exception from its coverage. Under the exception, it is not a criminal offense "for a person to intercept a wire, electronic or oral communication[] *where such person is a party to the communication* or one of the parties to the communication has given prior consent to such interception." Code § 19.2-62(B)(2) (emphasis added). Pursuant to this statute, therefore, a person does not criminally violate the wiretap act by

acquiring an electronic communication when that person is a party to the communication.  See Code § 19.2-62(A), (B)(2).

Appellant contends that Payne was not a party to the Omegle conversations because the chats were between appellant and "the fictitious persona Lilly."  He argues that Payne "interceded as a third party and intercepted messages transmitted by the [appellant] intended for Lilly," and thereby unlawfully acquired the contents of the Omegle chats.  We disagree.

Code § 19.2-61 specifically defines the term "person" as used in the wiretap act as "any employee or agent of the Commonwealth or a political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation[.]"  Although certain corporate entities are included in the definition of "person," the definition does not provide that a "persona" or virtual alternate identity is considered a "person."  If the General Assembly intended that personas or fictitious identities were "persons" under the wiretap act, it could have used express language in the definition of the term.  See Coles v. Commonwealth, 44 Va. App. 549, 558 (2004) ("[W]e must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute." (quoting Barr v. Town & Country Properties, Inc., 240 Va. 292, 295 (1990))).  However, nothing in the statutory definition of "person" refers to or contemplates a fictional, virtual, or alternate identity other than the specifically enumerated entities.  See Jackson v. Fid. & Deposit Co. of Maryland, 269 Va. 303, 313 (2005) ("Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.").  Because the statutory definition of "person" does not include personas, Lilly is not a "person" for purposes of the wiretap act.

Because Lilly is not a "person" under the statute, she was not a party to the Omegle chats with appellant.  See Code § 19.2-62(A), (B)(2).  Instead, it was Payne who participated in the chats; he testified that he was the party listed as "You" in the screenshots of the Omegle chats, that he

messaged appellant, and that he sent appellant the geomorph pictures of "Lilly." Hence, Payne was a "person who was a party to the communication[s]." Code § 19.2-62(B)(2). As such, he was protected by the consent exception and therefore did not criminally violate Code § 19.2-62(A) by recording the contents of the Omegle chats.

Appellant alternatively argues that because the "purpose of [s]tate [w]iretap [a]cts is protection of privacy," under Holmes v. State, 182 A.3d 341 (Md. Ct. Spec. App. 2018), "secretive recordings" may be inadmissible at trial, even if they are not criminal under the wiretap act. In Holmes, the Maryland Court of Special Appeals held that a telephone conversation recorded by one party to the conversation was inadmissible at trial because the Maryland wiretap statute, unlike the Virginia statute, requires all parties to consent to the recording. 182 A.3d at 351-52. Compare Code § 19.2-62(B)(2) with Md. Code, Cts. & Jud. Proc. § 10-402(c)(3). Nowhere in Holmes did the Maryland court hold that non-criminal "secretive recordings" of communications are inadmissible. Further, the statutory analysis in Holmes does not apply here. Nothing in Virginia's wiretap act renders inadmissible a communication recorded by an investigator who is a party to that communication.

In sum, Payne, as a party to the Omegle chats with appellant, did not violate Code § 19.2-62 of the wiretap act. Therefore, the court did not err by denying appellant's motion to suppress the contents of those chats.[4]

---

[4] In his assignment of error, appellant also contends that Payne recorded the Omegle chats "in violation of [Code §§] 19.2-61 . . . and 19.2-65[-]68." However, at the suppression hearing, appellant only argued that the contents of the chats should be suppressed because Payne intercepted the electronic communications in violation of Code § 19.2-62. Because "this Court does not consider arguments raised for the first time on appeal," Virostko v. Virostko, 59 Va. App. 816, 827 (2012), we decline to address appellant's arguments that Payne violated Code §§ 19.2-61 and -65-68, see Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]").

## 2. Motion to suppress statements made to police

Appellant contends that the court erred by denying his motion to suppress the statements he made in response to police questioning in the mobile command post. He argues that despite Payne's assurances that he was free to leave, he was actually in police custody and therefore should have been advised of his <u>Miranda</u> rights before the questioning.

At the suppression hearing, appellant originally argued that he was in custody for the entire time he was in the mobile command post. Appellant's counsel agreed with the court that the standard to determine custody is "a reasonable person's belief that they were free to leave." After acknowledging the standard, however, appellant's counsel conceded that "it might not be the case that a reasonable person would not feel free to leave" and appellant "might have felt free to leave or a reasonable person might have felt free to leave when [the police] say that you can." After making that concession, appellant's counsel modified his argument and contended that appellant was in custody after the police announced that they had five arrest warrants for him. He never reasserted his original argument that appellant was in custody for the entire time he was in the command post. The court ultimately ruled that appellant was not subjected to custodial interrogation prior to the police telling him, "[W]e do have five arrest warrants for you." Appellant's counsel then made the general statement, "I just note that I continue my objection to it." However, that objection was not specific enough to preserve counsel's earlier argument, later modified and abandoned, that appellant was in custody the entire time he was in the command post.

Rule 5A:18 requires that "an objection [be] stated with reasonable certainty at the time of the ruling." "The purposes of Rule 5A:18 are to allow the trial court the opportunity to 'take appropriate action to correct the error' and to 'avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" <u>Bethea v. Commonwealth</u>, 68 Va. App. 487, 498 (2018) (quoting <u>Maxwell v. Commonwealth</u>, 287 Va. 258, 264-65, 267 (2014)). "A specific,

contemporaneous objection also affords the opposing party an opportunity to address an issue at a time when the course of the trial may be altered to avoid the problem presented." Graham v. Cook, 278 Va. 233, 247-48 (2009).

> [W]hen a timely objection is made, a party may not later abandon that objection during trial and attempt to reassert the same objection on appeal. A party will be held to have waived a timely objection if the record affirmatively shows that he has abandoned the objection or has shown by his conduct the intent to abandon that objection.

Id. at 248. "Waiver is the voluntary and intentional abandonment of a known legal right, advantage, or privilege." Chawla v. BurgerBusters, Inc., 255 Va. 616, 622 (1998).

Here, by admitting that a reasonable person would have felt free to leave the mobile command post, appellant waived his argument that he was in custody prior to the police announcing that they had five arrest warrants for him. Therefore, he may not now argue on appeal that he was subjected to custodial interrogation prior to that point. Accordingly, Rule 5A:18 bars our consideration of appellant's assignment of error concerning statements made in response to police questioning in the command post.

### 3. Sufficiency of the evidence

Appellant challenges the sufficiency of the evidence to support his conviction of using a communications system to solicit a child believed to be less than fifteen years old, when the accused is more than seven years older, in violation of Code § 18.2-374.3(C).

When reviewing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the Commonwealth, the prevailing party below. See Riner v. Commonwealth, 268 Va. 296, 330 (2004). "[This Court] does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Brown v. Commonwealth, 68 Va. App. 44, 55 (2017) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). Rather, this Court "ask[s] whether '*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Brown, 68 Va. App. at 55 (quoting Jackson, 443 U.S. at 319).

Appellant challenges his conviction for violating Code § 18.2-374.3(C)(1), which states,

> It is unlawful for any person [eighteen] years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than [fifteen] years of age to knowingly and intentionally:
>
> Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person[.]

He argues that the only evidence that he exposed himself was a video that "law enforcement agents alleged was transmitted over a Dropbox website" but was not introduced into evidence. Appellant contends that the evidence was insufficient to establish the offense because the record contains no "proof of any kind that [he] was the person depicted in the video."

At trial, Payne testified that appellant sent a Dropbox link to a video that "depicted an adult male with . . . kind of stocky forearms, strawberry blond arm hair, strawberry blond pubic hair holding his erect penis in his left hand masturbating . . . [who] had a blue wristband on his left arm holding his penis." The Commonwealth also introduced a picture of appellant at Disney World that depicted appellant as an adult male with similar physical characteristics to the person in the Dropbox video. Payne also testified that the wristband worn by appellant in the Disney World picture was similar to the wristband in the Dropbox video sent by appellant. This evidence supports the jury's finding that appellant sent "Lilly" a video of himself exposing his genitals.

The second Omegle chat between appellant and Payne further supports the jury's finding. In the chat, before sending the Dropbox link, appellant told Lilly that he wanted to show her his genitals. Appellant then sent a Dropbox link, asked Lilly if she got it, if she liked it, and if it got her "hot." In response, Payne messaged, "[T]ake some pics too[,]" and appellant responded, "When we snapchat[.]"

"While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Finney v. Commonwealth, 277 Va. 83, 89 (2009) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)). Here, the combined evidence at trial — including Payne's testimony about the video shared via Dropbox, the Disney World photograph of appellant, the contents of the Omegle chat, and appellant's own admissions during his police interview — constituted sufficient evidence to establish that appellant exposed himself on Omegle to Payne, a person he reasonably believed was a thirteen-year-old child named Lilly, in violation of Code § 18.2-374.3(C)(1).

## CONCLUSION

The court did not err in denying appellant's motion to suppress the contents of his Omegle chat, because the investigator who participated in the chat did not violate the wiretap act. Appellant failed to preserve for appeal his argument that he was subjected to custodial interrogation without being advised of his Miranda rights. Finally, the evidence was sufficient to support his conviction of violating Code § 18.2-374.3(C)(1). Accordingly, we affirm appellant's convictions.

Affirmed.