COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia


RONTEYVOUS V. SMITH, S/K/A
  RONTEYVOUS VINDEZ SMITH

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1341-21-2            JUDGE JEAN HARRISON CLEMENTS
                                                  AUGUST 16, 2022

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF LUNENBURG COUNTY
                               J. William Watson, Jr., Judge

            Michael J. Hartley, Assistant Public Defender (Elizabeth Blair Trent,
            Assistant Public Defender, on briefs), for appellant.

            William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Ronteyvous Smith appeals an order of the trial court revoking and resuspending his

previously suspended sentence imposed for his failure to reregister as a violent sex offender,

second or subsequent offense.  On appeal, he argues that the trial court erred by finding that he

had violated the conditions of his supervised probation "because the Commonwealth failed to

demonstrate that the curfew imposed by probation and parole was authorized by statute or Court

order."  For the following reasons, we affirm the trial court's judgment.

                                        BACKGROUND

        "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed

unless there is a clear showing of abuse of discretion.'"  *Jacobs v. Commonwealth*, 61 Va. App.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

On December 10, 2019, the trial court convicted Smith on a guilty plea of failure to reregister as a violent sex offender, second or subsequent offense, in violation of Code § 18.2-472.1(B). Consistent with a written plea agreement, the court sentenced Smith to five years of incarceration with three years and nine months suspended, conditioned on two years of supervised probation. The sentencing order did not specify a curfew as a condition of probation. The order also did not impose a suspended period of post-release incarceration or require that Smith be subject to electronic monitoring via a Global Positioning System ("GPS") tracking device during an accompanying period of post-release supervision, as required under Code § 19.2-295.2:1.

When Smith began supervised probation on August 2, 2021, his probation officer ordered him to wear a GPS tracking device as a condition of his probation. Smith also agreed to follow a "general set" of eleven conditions of probation, including "condition six," which provided that he would "follow the Probation and Parole Officer's instructions" and "be truthful, cooperative, and report as instructed." Ten days later, Smith reviewed and signed a document entitled "sex offender special instructions." By signing the document, Smith promised to follow a curfew from 5:00 p.m. to 6:00 a.m., Monday through Saturday, during which he was to "report to work and return home" within the prescribed time frame.

On Friday August 27, 2021, Smith's probation officer received an alert from the GPS monitor indicating that Smith had not returned home by 5:00 p.m. Smith sent a text message to the officer explaining, "I gotta go to Wal-mart then home. 8 [sic] will be fine." Ignoring his officer's repeated directives to return home, Smith briefly returned to his residence at 6:57 p.m. before departing again at 7:26 p.m. He finally returned home at 7:52 p.m. after the officer texted him, "Go Home Immediately." Smith's probation officer filed a violation report concerning the curfew

violation. The trial court issued a show cause capias, which was served on Smith on September 15, 2021.

At a subsequent revocation hearing, the Commonwealth alleged that Smith had violated Condition 6 of his probation by disobeying the curfew. Thomas Moorefield, a senior probation officer with the Virginia Department of Corrections ("VDOC"), testified regarding Smith's non-compliance. He explained that VDOC policy mandates that all sex offenders be subject to a "high level of supervision" for the first six months of probation. Under VDOC policy, Smith's status as a violent sex offender required him to comply with a curfew as part of "sex offender special instructions" in addition to the "general set of conditions" required of all probationers. Moorefield also testified that VDOC's Chief of Operations had issued a policy memorandum directing probation officers to require GPS monitoring of any probationer "that has a failure to register conviction," regardless of whether a circuit court had complied with Code § 19.2-295.2:1's requirement to impose GPS monitoring in the sentencing order. In Smith's case, because the trial court did not include GPS monitoring in the sentencing order, his probation officer "placed [him] on GPS" supervision "per Department policy." Moorefield explained that Smith's probation officer enforced the curfew requirement by using GPS tracking to establish and monitor "inclusion zones" and "exclusion zones"—designated locations where Smith was required either to remain or avoid during curfew hours.

At the conclusion of the evidence, Smith moved to dismiss the show cause, arguing that the trial court could not revoke his previously suspended sentence based on his breach of curfew because it was an invalid condition of his probation. Smith conceded that a probation officer may impose a curfew "in certain cases without a Court order." But he maintained that his probation officer lacked authority to impose GPS monitoring as a condition of his probation without the court's explicit authorization under Code § 19.2-295.2:1. Continuing, Smith argued that because

- 3 -

the curfew would not have existed "but for the [invalid] GPS" requirement, the circuit court could not find him in violation of the terms of his probation.

The trial court commented that Smith made "a good point on the GPS," but it was "not convinced with the curfew." The court concluded that "probation and parole can institute a curfew simply by having someone referred to them" and found that Smith had breached his curfew as alleged. Accordingly, the court found Smith in violation of Condition 6 of his probation and revoked and resuspended the entirety of his previously suspended sentence. This appeal follows.

ANALYSIS

Smith argues that Code § 19.2-295.2:1[1] vests the circuit courts with exclusive, non-delegable authority to impose GPS monitoring as a condition of a defendant's post-release supervision for a second or subsequent offense of failing to reregister as a violent sex offender. Because the trial court failed to impose GPS monitoring in its sentencing order convicting him of a second violation of Code § 18.2-472.1(B), Smith maintains that his probation officer impermissibly usurped the trial court's authority by imposing the GPS condition without the court's express authorization. He asserts further that the court erred in concluding that the probation officer had authority to impose the curfew because "the curfew was imposed solely as a condition of and pursuant to the improperly imposed GPS."[2] Thus, he concludes that because

---

[1] The statute provides that when a defendant is convicted of a second or subsequent offense of failing to register or reregister as a sex offender, and both violations occurred after July 1, 2006, the sentencing court "shall impose an added term of postrelease incarceration of five years . . . in addition to any other punishment imposed" and "shall order that any term of postrelease incarceration imposed pursuant to this section be suspended, and the defendant be placed on active supervision under a postrelease supervision program operated by [VDOC]." Code § 19.2-295.2:1. Further, "[t]he court *shall order* that the defendant be subject to electronic monitoring by means of a GPS (Global Positioning System) tracking device, or other similar device during this period of postrelease supervision." *Id.* (emphasis added).

[2] On brief, Smith argues that the trial court concluded that "probation and parole did not have authority to impose the GPS" when it stated that Smith made "a good point on the GPS." This Court, however, does not "fix upon isolated statements of the trial judge taken out of the

- 4 -

his probation officer lacked "statutory authority" to impose GPS monitoring under Code § 19.2-295.2:1, he also "lacked the authority to impose" a curfew. As discussed below, we hold that Smith's probation officer had authority to impose GPS monitoring as a condition of Smith's probation under Title 53.1 of the Code.

Generally, "[i]n revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs*, 61 Va. App. at 535 (quoting *Davis*, 12 Va. App. at 86). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.* "However, the '*authority* of the trial court to revoke [an] appellant's suspended sentence is one of statutory interpretation and presents a pure question of law, which this Court reviews *de novo*.'" *Green v. Commonwealth*, 69 Va. App. 99, 103 (2018) (alteration in original) (quoting *Wilson v. Commonwealth*, 67 Va. App. 82, 88-89 (2016)).

"'The primary purpose of statutory interpretation "is to ascertain and give effect to legislative intent."'" *Holloway v. Commonwealth*, 72 Va. App. 370, 375 (2020) (quoting *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018)). This Court "determines legislative intent from the words employed in the statute," *Botkin*, 296 Va. at 314 (quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)), and "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of the words used," *Antisdel v. Ashby*, 279 Va. 42, 48 (2010) (citing *Smit v. Shippers' Choice of Va., Inc.*, 277 Va. 593, 597 (2009)).

When construing multiple statutes, this Court must "view the entire body of legislation and the statutory scheme 'to determine the true intention of each part.'" *Lamb v.*

full context in which they were made, and use them as a predicate for holding the law has been misapplied." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Accordingly, we decline Smith's invitation to construe the trial court's passing commentary as a legal conclusion that probation lacked authority to impose GPS monitoring.

*Commonwealth*, 40 Va. App. 52, 56 (2003) (quoting *McDaniel v. Commonwealth*, 199 Va. 287, 292 (1957)). Thus, "we will not read a legislative enactment in a manner that renders any portion of that enactment useless." *Antisdel*, 279 Va. at 48 (quoting *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008)). Rather, when interpreting interrelated statutes, "we will read and construe them together in order to give full meaning, force, and effect to each." *Id.* (citing *Cook*, 276 Va. at 480-81). "Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*, and should be construed together." *Butcher v. Commonwealth*, 298 Va. 392, 403 (2020) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 406 (1957)). Under those principles, we have held that "[p]robation statutes are highly remedial and should be liberally construed to provide trial courts a valuable tool for rehabilitation of criminals." *Lamb*, 40 Va. App. at 56 (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)).

The Director of VDOC has the power and duty to develop and implement such programs as may be necessary to carry out the provisions of Title 53.1 of the Code, which governs prisons and other methods of correction. The Director must also "[d]irect and supervise the work of all probation and parole officers," Code § 53.1-140(1), and "[c]arry or cause to be carried into effect all orders of the [State] Board [of Local and Regional Jails] and all rules and regulations adopted by it pursuant to the provisions of this article," Code § 53.1-140(2). A probation officer, in turn, must "perform" all "duties as may be required of him by the Director [of VDOC] and the court or judge by whom he was authorized." Code § 53.1-145(5). Those duties include the responsibility to "[s]upervise and assist all persons within [their] territory placed on probation." Code § 53.1-145(2). In addition, a probation officer shall "furnish every such person with a written statement of the conditions of his probation and instruct him therein." *Id.*

Read together, the above statutes grant VDOC the authority to develop and implement regulations governing the supervision of probationers, to further the well-established goals of probation: "to 'reform' the offender" and restore those who are a good social risk "to a useful place in society." *Dossola v. Commonwealth*, 37 Va. App. 444, 448 (2002) (first quoting *Connelly v. Commonwealth*, 14 Va. App. 888, 890 (1992); then quoting *Slayton v. Commonwealth*, 185 Va. 357, 366 (1946)). Nevertheless, it is well-recognized that "the Commonwealth [also] has the legitimate concern that a probationer is more likely to engage in criminal activities than an ordinary citizen." *Murry v. Commonwealth*, 288 Va. 117, 127 (2014). Accordingly, appropriate "probation conditions and supervision are necessary to ensure both that probation 'serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.'" *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)). Probation officers "are charged by the Commonwealth with responsibility for defining [a probationer's] permissible conduct" because they are best equipped to determine what constraints will accomplish the goals of probation. *Miller v. Commonwealth*, 25 Va. App. 727, 743 (1997) (citing Code § 53.1-145). Thus, the statutory scheme for probation affords VDOC and its probation officers the latitude necessary to set appropriate conditions for individual probationers.

To that end, VDOC permits its probation officers to implement GPS monitoring "as a supervision tool for high-risk cases or as a sanction." Operating Procedure 435.5 I(A)(3). Moreover, given the "heightened" concern for public safety when a probationer is a sex offender, *Murry*, 288 Va. at 127, VDOC *requires* probation officers to place violent sex offenders "on

GPS unless the circumstances of the [probationer] do not support the use of GPS." Operating Procedure 435.5 I(A)(3)(b)(i).[3]

The record in this case demonstrates that Smith's probation officer imposed the GPS monitoring requirement under VDOC policy, which requires probation officers to place all sex offenders on a "high level of supervision" for the initial six months of probation. *See* Operating Procedure 735.3 (A)(1)(b) (stating that sex offenders "must initially be supervised at level High"). VDOC policy also dictated that Smith's status as a violent sex offender required him to follow both a "general set of conditions," including Condition 6, and "sex offender special instructions," including the curfew. *See* Operating Procedure 735.3 (requiring imposition of "Sex Offender Special Instructions"). Consistent with that policy and his supervisory duties under Code § 53.1-145, Smith's probation officer implemented GPS tracking to enforce Smith's curfew.[4] *See* Operating Procedure 435.5 I(B)(2)(b)(i) (authorizing probation officers to impose "active GPS" to monitor a probationer's "location and curfew"); *see also* Operating Procedure 435.5 V(B)(1) (authorizing issuance of implementation memoranda to clarify operating procedures).

Notwithstanding the probation officer's clear statutory authority to impose a curfew and GPS monitoring to ensure compliance with the curfew, Smith asserts that the trial court impermissibly delegated authority reserved exclusively to it under Code § 19.2-295.2:1. Relying

---

[3] On brief, Smith concedes that Code § 53.1-145 independently grants probation officers broad authority to impose GPS monitoring as a "sanction" or "supervision tool" in certain "distinct factual scenarios" outlined in Operating Procedure 435.5.

[4] As part of GPS monitoring, the supervising probation officer must establish "Inclusion Zones . . . [that] set the curfew, which requires the probationer/parolee to stay within the zone surrounding the probationer's/parolee's residence or other designated areas in which the probationer/parolee must be during specified periods." Operating Procedure 435.5 II(D)(2)(b)(i).

on *Wilson*, 67 Va. App. at 82,[5] and *Fazili v. Commonwealth*, 71 Va. App. 239 (2019), Smith contends that his probation officer's unilateral imposition of GPS monitoring as a probation condition was improper. We find Smith's reliance on these authorities misplaced.

In *Wilson*, we held that a circuit court "improperly delegated" to a probation officer the authority to determine the "amount" of restitution a defendant owed because the restitution statute made that determination the "sole province" of the trial court. 67 Va. App. at 89. By contrast, in *Fazili*, we held that because Code § 19.2-303 did not impose any "specific duty" on the circuit court "to set the parameters" of a defendant's internet usage, a circuit court could order that a defendant "have no use of any device that can access internet unless approved by his Probation Officer." 71 Va. App. at 248. Smith asserts that as with the restitution statute in *Wilson*, Code § 19.2-295.2:1 specifically requires the trial court to order GPS monitoring as a condition of post-release supervision for second or subsequent convictions of failing to register as a violent sex offender. Therefore, in contrast to *Fazili*, he maintains that the trial court's duty could not be delegated to the probation officer. We disagree.

In *Wilson*, the restitution statute imposed a duty upon the circuit court to "determine" the "amount" of restitution owed. 67 Va. App. at 89. To make such a determination the trial court made discretionary factual findings; the court could not delegate that fact finding discretion to a probation officer. By contrast, Code § 19.2-295.2:1 imposes no *discretionary* duty upon the trial court to make any factual findings or otherwise "set the parameters of the condition at issue." *Fazili*, 71 Va. App. at 254. Instead, for a discrete category of offenses, it imposes an *administrative* duty on a sentencing court to order GPS monitoring as a condition of mandatory post-release supervision, without requiring the court also to circumscribe the specific parameters

---

[5] *Cilwa v. Commonwealth*, 298 Va. 259, 270-71 (2019), abrogated *Wilson* in part, on grounds immaterial to our analysis in this case.

of the GPS condition. Thus, Code § 19.2-295.2:1 does not create a non-delegable discretionary authority for a sentencing court.

In addition, Smith's argument seizes upon Code § 19.2-295.2:1's language mandating that "the court shall" order GPS monitoring in certain cases and asks this Court to consider that language in isolation to conclude that the General Assembly did not intend "to delegate such power to [VDOC] in the absence of action by the trial court." Under settled principles of statutory construction, however, this Court must consider a statute's language in the broader context of the "entire body of legislation and the statutory scheme" of which it is a part. *Lamb*, 40 Va. App. at 56 (quoting *McDaniel*, 199 Va. at 292). Accordingly, we must read and construe the provisions of Code § 19.2-295.2:1 together with those of Title 53.1, "to give full meaning, force, and effect to each." *Antisdel*, 279 Va. at 48 (citing *Cook*, 276 Va. at 480-81). Applying those principles in this case, we conclude that Smith's probation officer had independent authority under Title 53.1 of the Code to impose the GPS requirement, and Code § 19.2-295.2:1 does not undermine that authority. To conclude otherwise—that the trial court had sole authority to order GPS monitoring under Code § 19.2-295.2:1—would render Title 53.1's provisions "useless" and hinder VDOC's authority to create conditions of probation necessary to address the needs of individual probationers, promote reform, and protect the public. Considering the statutory framework *in pari materia*, we find Smith's argument unpersuasive.[6]

---

[6] Smith does not argue that courts have sole authority under Code § 19.2-303 to impose GPS monitoring as a condition of probation. To the extent his assignment of error encompasses such an argument, the issue is waived. "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Jones v. Commonwealth*, 51 Va. App. 730, 746 (2008) (quoting *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed*, 301 S.W.3d at 615). Accordingly, Rule 5A:20 forecloses our review. *Cf. Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) (holding that when a party's failure to comply with Rule 5A:20 is "significant, they have waived their right to have these issues reviewed by this Court").

CONCLUSION

In sum, we hold that Smith's probation officer had authority to impose GPS monitoring as a condition of probation under Title 53.1 of the Code. Accordingly, because Smith asserts no other reason to conclude that the trial court erred in ruling that the probation officer lawfully imposed the curfew requirement, we affirm the trial court's judgment.

*Affirmed.*